# No. 15-1720

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

KIMBERLY HIVELY,

*Plaintiff-Appellant*,

v.

IVY TECH COMMUNITY COLLEGE, South Bend,

*Defendant-Appellee*.

On Appeal from the United States District Court for the
Northern District of Indiana, Case No. 34-cv-01791-RL-CAN
The Honorable Judge Rudy Lozano

## PETITION FOR REHEARING AND REHEARING EN BANC OF PLAINTIFF-APPELLANT KIMBERLY HIVELY


Omar Gonzalez-Pagan
Karen L. Loewy
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
T: (212) 809-8585 | F: (212) 809-0055
ogonzalez-pagan@lambdalegal.org
kloewy@lambdalegal.org

Gregory R. Nevins
*Counsel of Record*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
730 Peach Street NE, Suite 640
Atlanta, Georgia 30308
T: (404) 897-1880 | F: (404) 897-1884
gnevins@lambdalegal.org

*Counsel for Plaintiff-Appellant Kimberly Hively*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 15-1720

Short Caption: Kimberly Hively v. Ivy Tech Community College, South Bend

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellant Kimberly Hively

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lambda Legal Defense & Education Fund, Inc.

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ Gregory R. Nevins Date: August 25, 2016

Attorney's Printed Name: Gregory R. Nevins

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes X No ______

Address: 730 Peach Street NE, Suite 640, Atlanta, GA 30308

Phone Number: (404) 897-1880 Fax Number: (404) 897-1884

E-Mail Address: gnevins@lambdalegal.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 15-1720

Short Caption: Kimberly Hively v. Ivy Tech Community College, South Bend

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellant Kimberly Hively

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lambda Legal Defense & Education Fund, Inc.

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ Omar Gonzalez-Pagan    Date: August 25, 2016

Attorney's Printed Name: Omar Gonzalez-Pagan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ______ No X

Address: 120 Wall Street, 19th Floor, New York, NY 10005

Phone Number: (212) 809-8585    Fax Number: (212) 809-0055

E-Mail Address: ogonzalez-pagan@lambdalegal.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 15-1720

Short Caption: Kimberly Hively v. Ivy Tech Community College, South Bend

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiff-Appellant Kimberly Hively

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lambda Legal Defense & Education Fund, Inc.

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ Karen L. Loewy Date: August 25, 2016

Attorney's Printed Name: Karen L. Loewy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ____ No X

Address: 120 Wall Street, 19th Floor, New York, NY 10005

Phone Number: (212) 809-8585 Fax Number: (212) 809-0055

E-Mail Address: kloewy@lambdalegal.org

## TABLE OF CONTENTS


APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT i

TABLE OF CONTENTS iv

TABLE OF AUTHORITIES v

STATEMENT REQUIRED BY FED. R. APP. P. 35 1

ARGUMENT 3

I. EVEN THOUGH THE PANEL UNEQUIVOCALLY AGREED WITH ONE OF HIVELY'S ARGUMENTS FOR COVERAGE UNDER TITLE VII AND EFFECTIVELY AGREED WITH THE OTHER TWO ARGUMENTS, THE PANEL REACHED AN ERRONEOUS RESULT BECAUSE IT FELT BOUND BY CIRCUIT PRECEDENT. 3

II. GIVEN THAT THIS IS THE FIRST APPELLATE RULING SINCE *BALDWIN*, OVERRULING DEMONSTRABLY WRONG PRECEDENT IS BOTH EXCEPTIONALLY IMPORTANT AND JUDICIALLY EFFICIENT. 7

III. THIS PETITION COMPARES FAVORABLY WITH THIS COURT'S RECENT EN BANC HISTORY IN CASES INVOLVING STATUTORY INTERPRETATION. 11

PETITION FOR PANEL REHEARING 13

CONCLUSION 15

CERTIFICATE OF SERVICE 16

## TABLE OF AUTHORITIES

### Cases


*Baldwin v. Foxx*,

Appeal No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015) .............................. *passim*

*Bloch v. Frischolz*,

587 F.3d 771 (7th Cir. 2009) (en banc) .............................................................11, 12

*Centola v. Potter*,

183 F. Supp. 2d 403 (D. Mass. 2002) ..........................................................................9

*Christiansen v. Omnicom Grp.*,

--- F.Supp.3d ---, 2016 WL 951581 (S.D.N.Y. Mar. 9, 2016)....................................................5

*City of Los Angeles Dep't of Water & Power v. Manhart*,

435 U.S. 702 (1978)..........................................................................................................2

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,

433 U.S. 36 (1977)............................................................................................................5

*Foray v. Bell Atlantic*,

56 F. Supp. 2d 327 (S.D.N.Y. 1999)..........................................................................13

*Glenn v. Brumby*,

663 F.3d 1312 (11th Cir. 2011) ..........................................................................10, 15

*Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*,

388 F.3d 327 (7th Cir.2004) ..........................................................................................11

*Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*,

224 F.3d 701 (7th Cir. 2000) .......................................................................... *passim*

*Higgins v. New Balance Ath. Shoe, Inc.*,

194 F.3d 252 (1st Cir. 1999)....................9

*Hively v. Ivy Tech Comm. College*,

No. 15-1720, 2016 WL 4039703 (7th Cir. July 28, 2016).................... *passim*

*Hopkins v. Balt. Gas & Elec. Co.*,

77 F.3d 745 (4th Cir. 1996) ....................9

*Koren v. Ohio Bell Co.*,

892 F. Supp. 2d 1032 (N.D. Ohio 2012)....................9

*Lawrence v. Texas*,

539 U.S. 558 (2003)....................13

*Minn-Chem, Inc. v. Agrium, Inc.*,

683 F.3d 845 (7th Cir. 2015) (en banc) ("*Minn-Chem II*") ....................2, 12, 13

*Minn-Chem, Inc. v. Agrium, Inc.*,

657 F.3d 650 (7th Cir. 2011) ("*Minn-Chem I*"),

*reh'g en banc granted, opinion vacated* (Dec. 2, 2011) ....................12

*Muhammad v. Caterpillar, Inc.*,

767 F.3d 694 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 16, 2014) ....................1, 14

*Newport News Shipbuilding & Dry Dock Co. v. EEOC*,

462 U.S. 669 (1983)....................2

*Newsom v. Friedman*,

76 F.3d 813 (7th Cir.1996) ....................12

*Obergefell v. Hodges*,

135 S. Ct. 2584 (2015)....................13

*Oncale v. Sundowner Offshore Servs. Inc.*,

523 U.S. 75 (1998)........................................................................................1, 2, 12

*Planned Parenthood of S.E. Pennsylvania v. Casey*,

505 U.S. 833 (1992)..........................................................................................5

*Price Waterhouse v. Hopkins*,

490 U.S. 228 (1989)........................................................................................1, 4

*Phillips v. Martin Marietta Corp.*,

400 U.S. 542 (1971)..........................................................................................2

*Santos v. United States*,

461 F.3d 886 (7th Cir. 2006) ..............................................................................8

*Spearman v. Ford Motor Co.*,

231 F.3d 1080 (7th Cir. 2000) ..................................................................... *passim*

*Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83 (1998)............................................................................................2

*Suesz v. Med-1 Solutions, LLC*,

757 F.3d 636 (7th Cir. 2014) (en banc) ............................................................12

*Swift & Co. v. Wickham*,

382 U.S. 111 (1965)..........................................................................................5

*Tinory v. Autozoners, LLC*,

No. 13-11477, 2016 WL 320108 (D. Mass. Jan. 26, 2016)......................................9

*Trafficante v. Metro. Life Ins. Co.*,

409 U.S. 205 (1972)......................................................................................11, 12

*Ulane v. Eastern Airlines, Inc.*,

742 F.2d 1081 (7th Cir. 1984) ....................14

*United Phosphorus, Ltd. v. Angus Chem. Co.*,

322 F.3d 942 (7th Cir. 2003) (en banc) ....................2

*United States v. Hill*,

48 F.3d 228 (7th Cir. 1995) ....................7

*United States v. Lara–Unzueta*,

735 F.3d 954, 961 (7th Cir. 2013) ....................13

*Vickers v. Fairfield Med. Ctr.*,

453 F.3d 757 (6th Cir. 2006) ....................9

*Videckis v. Pepperdine Univ.*,

150 F. Supp. 3d 1151 (C.D. Cal. 2015) ....................5

*Williamson v. A.G. Edwards & Sons, Inc.*,

876 F.2d 69 (8th Cir. 1989) ....................9

*Wrightson v. Pizza Hut of America, Inc.*,

99 F.3d 138, 143 (4th Cir. 1996) ....................9

**Statutes**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ....................1

**Rules**

Fed. R. App. P. 35(b) .................... 1

Fed. R. App. P. 40 .................... 13

**Other Authorities**

Nancy Gertner, *Losers' Rules*,

122 Yale L.J. Online 109 (2012) .......................................................................................... 10

**STATEMENT REQUIRED BY FED. R. APP. P. 35**

Pursuant to Federal Rule of Appellate Procedure 35(b), Plaintiff-Appellant Kimberly Hively files this Petition for Rehearing and Suggestion for Rehearing En Banc of the panel's July 28, 2016 Opinion in this case, which should be granted for the following reasons:

First, the panel's decision to abide by this circuit's precedents in *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 704 (7th Cir. 2000), and *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1085 (7th Cir. 2000)—notwithstanding acknowledging the many flaws in those opinions and others than have followed them[1]—conflicts with multiple decisions of the United States Supreme Court. Consideration by the full Seventh Circuit is therefore necessary to secure and maintain uniformity of the law. In allowing the firing of women, but not men, who are attracted to women, simply based on prior cases' reasoning that Congress did not specifically intend to protect lesbians, gay men, and bisexuals and has not amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, to expressly so provide, *Hively v. Ivy Tech Comm. College*, No. 15-1720, 2016 WL 4039703 at **1, 3, 14-15 (7th Cir. July 28, 2016), the panel's result conflicts with:

- *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (Title VII covers mistreatment motivated in any respect by the employee's sex irrespective of whether Congress contemplated that particular coverage);

- *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240, 242 (1989) (Title VII mandates that "gender must be irrelevant to employment decisions;" the employer cannot rely "upon sex-

[1] Hively agrees with the panel's focus on *Hamner* and *Spearman*, since subsequent cases "relied on those precedents." *See Hively*, 2016 WL 4039703 at *2. However, the subsequent cases do not include *Muhammad v. Caterpillar, Inc.*, 767 F.3d 694 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 16, 2014), for the reasons discussed in the panel rehearing petition, below.

based considerations"); *id*. at 251 (reaffirming holding in *City of Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978) ("*Manhart*"), that Title VII strikes at the "entire spectrum" of mistreatment based on gender stereotypes); 490 U.S. at 243 n.9 (the same tests for liability under Title VII apply across the statute's enumerated traits);

- *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682-683 (1983) (holding that Title VII is violated under *Manhart*'s "simple" test where men with dependents are treated worse than woman with dependents);

- *Manhart*, 435 U.S. at 707 n.13 (Title VII strikes "at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes"); *id*. at 711 (articulating the "simple test" that Title VII is violated if there is "treatment of a person in a manner which but for that person's sex would be different");

- *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971) (Title VII does not "permit[] one hiring policy for women and another for men").[2]

Second, this case involves a question of exceptional importance: whether—as the agency charged with the Title VII's enforcement has itself concluded—that statute's sex discrimination ban is violated when an employee suffers adverse treatment that would have not been inflicted on them had they been of a different sex. *See Baldwin v. Foxx,* Appeal No. 0120133080, 2015 WL 4397641 (EEOC July 16, 2015). En banc review is particularly warranted here, given the panel's

[2] While the need to overrule precedent may be obvious when there is a subsequent conflicting Supreme Court ruling, the need well may still exist if that precedent overlooked or misconstrued then-existing Supreme Court case law. For example, when this court reversed *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942 (7th Cir. 2003) (en banc), in *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2015) (en banc) ("*Minn-Chem II*"), it relied in part on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), *see Minn-Chem II*, 322 F.3d at 852, although *Steel Co.* had been cited at length by the four dissenting judges in *United Phosphorous*, 322 F.3d at 955–56 (Wood, J., dissenting).

extensive demonstration that cases rejecting Title VII's coverage of anti-gay discrimination have resulted in "a jumble of inconsistent precedents," *Hively*, 2016 WL 4039703 at *5, which comprise a "confused hodge-podge of cases," *id.* at *9, that draw "false distinction[s]," *id.*, lead to "unsatisfying results," *id.* at *11, create "inconsistency" within Title VII's case law, *id.* at **12-13, and ultimately yield results that "seem[] illogical," *id.* at *14, for "no rational reason," *id.* This court accordingly should grant en banc review to correct this disarray—a situation fed by this circuit's prior decisions— rather than leave action to courts in other circuits, as the panel decision does; or simply wait for action by Congress or the Supreme Court, as the opinion suggests. *Id.* at **11, 15. The dodge of leaving resolution of this issue to the Supreme Court is an especially poor reason to deny the petition when this Court has helped create the need for clarification through its own prior decisions. Moreover, the granting of the petition and overruling of this Court's bad precedents in *Hamner* and *Spearman* likely represent this Court's last opportunity to facilitate Supreme Court resolution of the current legal quagmire.

## ARGUMENT

### I. EVEN THOUGH THE PANEL UNEQUIVOCALLY AGREED WITH ONE OF HIVELY'S ARGUMENTS FOR COVERAGE UNDER TITLE VII AND EFFECTIVELY AGREED WITH THE OTHER TWO ARGUMENTS, THE PANEL REACHED AN ERRONEOUS RESULT BECAUSE IT FELT BOUND BY CIRCUIT PRECEDENT.

The panel completely accepted as a correct statement of the law one of Hively's several independent arguments about Title VII's applicability to Hively's employment discrimination claim. *Hively*, 2016 WL 4039703 at **12-13. It also repeatedly suggested that a court with more judicial power than the panel overrule *Hamner* and its progeny to correct a legal landscape that has had judges "coming up short on rational answers," "tend[ing] to turn circles around themselves" and beginning to "scratch their heads and wonder" how the current judicial exclusion

of sexual orientation discrimination from the ambit of Title VII possibly can be maintained. *Id*. at **4, 5, 10. Yet the panel accepted that incorrect and irrational exclusion as binding law.

Interracial Relationship Analogy Argument for Title VII Coverage. Even though "the classifications within Title VII—race, color, religion, sex, or national origin—must all be treated equally," *id*. at *13; *see also id.* (quoting *Price Waterhouse*, 490 U.S. at 244 n. 9), the panel admitted that an improper inconsistency exists between barring claims by a woman fired for romantically associating with another woman and the accepted rule that "Title VII protects from discrimination a white woman who is fired for romantically associating with an African-American man," *Hively*, 2016 WL 4039703 at *13. Notwithstanding this impermissible conflict in Title VII jurisprudence, the panel affirmed dismissal of Hively's Title VII complaint.

Gender Stereotyping Argument for Coverage. Most of the panel's opinion was a thorough endorsement of Hively's independent argument that there cannot be legally different treatment of discrimination against a woman based on failure to conform to the stereotype that women should be attracted only to men as compared to discrimination based on failure to conform to any other gender stereotype. "There is no reason to believe that the disparate treatment caused when employees do not live up to the stereotype of how 'real' men and women act in their sexual lives should be excluded" from Title VII's target of "'the *entire* spectrum of disparate treatment of men and women resulting from sex stereotypes.'" *Id*. at *13 (quoting *Price Waterhouse*, 490 U.S. at 251) (emphasis in original).

In its opinion, the panel made clear that the decision it reached was premised upon a "paradoxical legal landscape," *Hively*, 2016 WL 4039703 at *11, that "leaves us with a somewhat odd body of case law that protects a lesbian who faces discrimination because she fails to meet some superficial gender norms . . . but not a lesbian who meets cosmetic gender norms, but violates

the most essential of gender stereotypes." *Id.* The panel's opinion bluntly recognized that "'[t]he lesson imparted by the body of Title VII litigation concerning sexual orientation discrimination and sexual stereotyping seems to be that no coherent line can be drawn between these two sorts of claims.'" *Id.* at *10 (quoting *Christiansen v. Omnicom Grp.*, --- F.Supp.3d ---, 2016 WL 951581 at *14 (S.D.N.Y. Mar. 9, 2016)). As a result, the panel recognized that the judicially-created distinction "between gender non-conformity discrimination claims and sexual orientation discrimination claims [may] not hold up under future rigorous analysis." *Hively*, 2016 WL 4039703 at *14.

En banc review is thus appropriate to address a rule that "has proven to be intolerable simply in defying practical workability." *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 854 (1992). "[C]onsiderations of *stare decisis* should not deter" this court from revisiting prior and unworkable precedents. *Swift & Co. v. Wickham*, 382 U.S. 111, 116 (1965). The "'illusory and artificial'" distinction, between "gender non-conformity discrimination claims and sexual orientation discrimination claims," *Hively*, 2016 WL 4039703 at *14 (quoting *Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151, 1159 (C.D. Cal. 2015), "should not be kept on the books in the name of *stare decisis* once it is proved to be unworkable in practice; the mischievous consequences to litigants and courts alike from the perpetuation of an unworkable rule are too great." *Swift*, 382 U.S. at 116. "[C]larification of the law in this area justifies reconsideration" of precedent where the judicial exclusion of sexual orientation discrimination from Title VII's coverage "has been the subject of continuing controversy and confusion." *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 47, 49 (1977).

To be sure, the panel opined that differential legal treatment of sexual orientation discrimination could theoretically be justified based on "some aspects of a worker's sexual

orientation that create a target for discrimination apart from any issues related to gender," citing as possible examples of stereotypes not "related to gender" but instead "about particular aspects of the [so-called] gay and lesbian 'lifestyle,' . . . ideas about promiscuity, … spending habits, child-rearing, sexual practices, or politics." *Hively*, 2016 WL 4039703 at *7. But, even if it remains legal to fire employees based on such practices or beliefs, it cannot be legal to fire them based on assumptions one makes about such practices or beliefs based in part on their race, color, religion, sex, or national origin. Title VII would be violated if a white woman were harassed based on stereotypes about her "promiscuity, . . . spending habits, child-rearing, sexual practices, or politics" that arose only because she married a black man, and the same must be true if those stereotypes arose only because she married a woman. In sum, since the panel's sole stated reservation about fully embracing the gender stereotyping theory is not a legally viable distinction, the panel effectively endorsed this argument for coverage as well.

<u>Sex-Plus Argument for Coverage</u>. Hively further raised the simple argument that Title VII prohibits treating Kim worse than Ken for their shared attraction to women. The panel agreed with this proposition, even if somewhat eliptically, in a manner that devastated the rulings in *Hamner* and *Spearman*.

*Hamner* and *Spearman* based their rulings that Title VII does not cover discrimination "based solely upon a person's sexual preference or orientation" on the assumption that "Congress intended the term 'sex' to mean 'biological male or biological female,' and not one's sexuality or sexual orientation." *Hamner*, 224 F.3d at 704 (citation omitted); *accord Spearman*, 231 F.3d at 1084. The notion that, if "sex" in Title VII means "male or female," antigay discrimination is *per se* excluded from coverage, however, is completely wrong. *See Baldwin*, 2015 WL 4397641 at *5 ("Indeed, we conclude that sexual orientation is inherently a 'sex-based consideration,' and an

allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII."). Neither *Hamner* nor *Spearman* explain their leap in logic; more importantly, one cannot point to anything in either decision that undermines the points made by Hively, *Baldwin*, and the panel opinion, further strengthening the case for overruling *Hamner* and its progeny. *See United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995) ("[A]n opinion that contains no discussion of a powerful ground later advanced against it is more vulnerable to being overruled than an opinion which demonstrates that the court considered the ground now urged as a basis for overruling.").

The panel recognized the flaw in *Hamner* and *Spearman* of assuming no coverage of sexual orientation discrimination if "sex" has the narrow meaning of "male or female." *Hively*, 2016 WL 4039703 at *22 ("A court would not necessarily need to expand the definition of 'sex discrimination' beyond the narrow understanding of 'sex' we adopted in *Ulane*, to conclude that" discrimination against those who are "lesbian, gay, and bisexual . . . .[is] because of sex."). This is clearly correct: If an employer balks only at interracial marriages of its employees, it takes only the narrowest understanding of "race" in Title VII to appreciate that the statute is violated. Similarly, no elaborate construct of "sex" is required to recognize that Title VII is violated if men are allowed to be romantically attracted to women, but women are not. The panel, by recognizing that antigay bias is "because of sex" even if "sex" means "male or female," endorses Hively's sex-plus argument for coverage and rejects *Hamner*'s and *Spearman*'s assumption about the consequences of a narrow definition of "sex."

## II. GIVEN THAT THIS IS THE FIRST APPELLATE RULING SINCE *BALDWIN*, OVERRULING DEMONSTRABLY WRONG PRECEDENT IS BOTH EXCEPTIONALLY IMPORTANT AND JUDICIALLY EFFICIENT.

The panel's own opinion makes the case for Hively about the exceptional importance of

this matter. In its opinion, the panel highlighted the extraordinary significance of this case and the questions it presents. This appeal involves the first appellate ruling on whether Title VII's ban on sex discrimination protects lesbian, gay, and bisexual employees since the *Baldwin* decision was issued, a decision the panel itself described as "significant in several ways." *Hively*, 2016 WL 4039703 at *4.

As the panel noted, *Baldwin* "marks the first time that the EEOC has issued a ruling stating that claims for sexual orientation discrimination are indeed cognizable under Title VII as a form of sex discrimination." *Id*. And, while the panel erroneously affirmed the district court's dismissal by relying on the Court's "prior precedents on this point, [it did] so acknowledging that other federal courts are taking heed of the reasoning behind the EEOC decision in *Baldwin* . . . [and] are beginning to question the doctrinaire distinction between gender non-conformity discrimination and sexual orientation discrimination and coming up short on rational answers." *Id.* As such, the EEOC's decision in *Baldwin* represents one of those "supervening developments," *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006), that should allow this Court to revisit its precedents' contrived view of Title VII's prohibition of sex discrimination. This Court is therefore being asked not merely to give Hively her day in court but also to lead the way in correcting a "paradoxical legal landscape," *Hively*, 2016 WL 4039703 at *11, by following *Baldwin* and the several district court decisions that have now agreed with it and issuing the first federal appellate ruling recognizing sexual orientation discrimination as "because of . . . sex" under Title VII.

A petitioner for rehearing should be cognizant that a grant will consume valuable court resources. But here, the expenditure of those resources by this Court makes particular sense given both the importance that the first post-*Baldwin* appellate decision arrive at the correct result and the relative efficiency with which this Court can complete the legal journey the panel opinion

expended considerable resources to chart.

By contrast, a denial of the petition would lead to a longer, uncertain path to correcting the law. A denial of rehearing en banc presumably would be stronger in similarly-situated "anti-coverage" circuits, which may well follow this Court's lead and not disturb precedent, absent different arguments or a court's willingness to go en banc on the issue itself. And reaffirmances of bad precedent would be expected to come quicker than some other appellate court correctly following *Baldwin*, given that this Court's inaction would encourage the filing and granting of motions to dismiss. Each circuit reaffirmance of precedent would slam shut the federal courthouse doors within those circuits on workers enduring sexual orientation discrimination until the Supreme Court or Congress takes action.

The main negative effect a denial of the petition has on the "open question" circuits[3] is having to await the long process of generating the decision the panel left to other courts. At least theoretically, denial of the petition should not vitiate the positive effect the panel opinion is likely to have on the development of the law in "open question" circuits. One would expect that district courts would deny anti-coverage dispositive motions, embracing the logic of the well-reasoned panel opinion, as has happened in district court decisions that have followed *Baldwin*. This should

---

[3] As to which circuits are in which camps, the first five cases listed (all post-*Oncale*) in the panel string cite at 2016 WL 4039703 at *2, beginning with *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757 (6th Cir. 2006), are "anti-coverage precedent" circuits. The remaining cases up to the "But see" cite are "open question" circuits, as is the absent Eleventh Circuit. However, later cases arguably circumscribe the rulings in *Vickers* and *Higgins v. New Balance Ath. Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999). *See Tinory v. Autozoners, LLC*, No. 13-11477, 2016 WL 320108 (D. Mass. Jan. 26, 2016); *Koren v. Ohio Bell Co.*, 892 F. Supp. 2d 1032 (N.D. Ohio 2012); *Centola v. Potter*, 183 F. Supp. 2d 403 (D. Mass. 2002). Among the "open question" circuits, it should be noted that the fact that *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 751-52 (4th Cir. 1996), and the not-cited *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 143 (4th Cir. 1996), are same-sex harassment cases and *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989), is a race discrimination case has not stopped their *dicta* that Title VII does not cover sexual orientation discrimination from being among the most widely-cited cases for that proposition.

reduce both the incentive to file and the incentive to grant motions to dismiss, but both events are necessary components of the likely quickest path to a circuit court's reversal of a ruling dismissing the case on coverage grounds. Absent that, such a decision would come most likely as an affirmance of a judgment for the plaintiff in a strong factual case, a process that takes considerable time, during which the case well may disappear, "because employers are 'repeat players' . . . [who] have every incentive to settle the strong cases and litigate the weak ones."[4] *See* Nancy Gertner, *Losers' Rules*, 122 Yale L.J. Online 109, 109 (2012), *available at* http://www.yalelawjournal.org/pdf/1111_aau9fyvc.pdf (citation omitted). Indeed, real-world experience bears this out; in the string-cite of pro-coverage district court opinions in *Baldwin*, each case that is not still pending was settled, thus precluding a circuit court from adopting the lower court's reasoning. *See Baldwin*, 2015 WL 4397641 at *7 n.10. All of this suggests that perhaps the only feasible scenario for an appellate decision correctly following *Baldwin* in the relatively near future would be perhaps the most unlikely: the case whose strength convinces the pessimistic employer that a motion to dismiss is worthwhile, and despite long odds, a district court grants it.

In short, one thing seems reasonable to assume: the denial of this petition puts us on an unnecessarily long and uncertain path to bringing much needed rationality to this area of the law, the beneficiary of which will not be Hively. By contrast, the granting of this petition and the overruling of anti-coverage precedent efficiently and promptly corrects erroneous precedent at this optimal post-*Baldwin* moment. It also promptly creates the circuit split that the Supreme Court prioritizes and could rely on immediately or at whatever juncture it deems appropriate. Moreover,

---

[4] By means of example, the most recent appellate decision holding that firing a transsexual employee is sex discrimination, *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), was issued almost three and a half year after the case was filed—despite the fact that the ruling came out five days after oral argument.

a grant of the petition that results in overruling bad precedent will likely persuade other circuits to follow that path, irrespective of their precedent. Not only would Kim Hively and other targets of discrimination get their day in court, but hopefully the true goal of Title VII—**preventing** discrimination—will be advanced by a clearer judicial consensus that such conduct is not only reprehensible, *see Hively*, 2016 WL 4039703 at *15, but also unlawful.[5]

## III. THIS PETITION COMPARES FAVORABLY WITH THIS COURT'S RECENT EN BANC HISTORY IN CASES INVOLVING STATUTORY INTERPRETATION.

This petition compares favorably with other recent instances of the court's granting rehearing en banc to overrule a prior statutory interpretation. The en banc court's unanimous opinion in *Bloch v. Frischolz*, 587 F.3d 771 (7th Cir. 2009) (en banc), lends considerable support to the petition here, in that, in *Bloch*, this Court reconsidered and overruled a precedent that had limited the reach of federal nondiscrimination law; in that case, the Fair Housing Act ("FHA"). *Id.* at 782 (overruling, in part, *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir.2004)). Just as the EEOC's *Baldwin* decision strongly supports Hively's contentions and the panel opinion's logic, *Bloch* relied heavily on a directly-applicable interpretation by the Department of Housing and Urban Development, because "HUD's views about the meaning of the FHA are entitled to 'great weight'" irrespective of the inapplicability of "*Chevron* deference" in the case at hand. *Bloch*, 587 F.3d at 781 (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 210 (1972)). This closely parallels the panel's observation in *Hively*,

[5] By a count of the times each tribunal is mentioned, the panel appears to prefer that the Supreme Court issue the definitive decision, rather than this court correcting *Hamner* and its precedent. But the granting of the petition facilitates both results. Most Supreme Court observers would say that this Court's creation of a circuit split is likely both to improve the prospects for Supreme Court review and to reduce the wait for it.

that rulings of the EEOC, "the body charged with enforcing Title VII," are entitled to a "level of deference." *Hively*, 2016 WL 4039703 at **3-4.

Likewise, in *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc), this full court overruled *Newsom v. Friedman*, 76 F.3d 813 (7th Cir.1996), because the earlier court has used the wrong statutory interpretation approach and "lost sight of the purpose of" the statute it was interpreting. *Suesz*, 757 F.3d. at 646. *Hamner* and *Spearman* lost sight of the statutory interpretation approach mandated by *Oncale*: to recognize all claims of discrimination based in any part on the plaintiff's gender, irrespective of whether Congress specifically sought to cover that claim. *See Oncale*, 523 U.S. at 79-80. By comparison, the precedents overruled in *Bloch* and *Suesz* exhibited comparatively little tension with Supreme Court precedent. As for Supreme Court precedent supporting its new statutory interpretation approach, *Suesz* cites none, and *Bloch* merely notes that its broader standing rule better served Congress's goal in passing the FHA: creating "truly integrated and balanced living patterns." *Bloch*, 587 F.3d at 776, 782 (quoting *Trafficante*, 409 U.S. at 211).

Certainly en banc review is appropriate to overrule precedents in conflict with Supreme Court authority. As with the panel decision here, the panel in *Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011) ("*Minn-Chem I*"), *reh'g en banc granted, opinion vacated* (Dec. 2, 2011), had pointed out that the prior en banc decision in *United Phosphorus* was in conflict with multiple Supreme Court rulings and was "'ripe for reconsideration,' but it was hesitant to take that step on its own." *Minn-Chem II*, 683 F.3d at 852 (citing *Minn-Chem I*, 657 F.3d at 653); *see also Hively*, 2016 WL 4039703 at **13-14 (bemoaning the fact that many courts have ignored *Price Waterhouse* and wrongly immunized the "disparate treatment of [gay] men and [lesbian] women resulting from sex stereotypes," but nonetheless declining to part ways with *Hamner* and the cases

following it. As in *Minn-Chem II*, Hively respectfully requests that the active judges "agree with the panel that this issue is indeed ripe for reconsideration and ought to be settled now." *Minn-Chem II*, 683 F.3d at 852.

## **PETITION FOR PANEL REHEARING**

Pursuant to Federal Rule of Appellate Procedure 40, Hively also asks the panel for rehearing, because the panel incorrectly assumed that there was no intervening Supreme Court authority that undermined *Hamner* and *Spearman*. The requested rehearing also seeks the deletion of certain incorrect or misleading passages.

The panel opinion provides the impetus for rehearing by both the en banc court and the panel itself in its compelling comparison of employees in interracial relationships and employees in same-sex relationships, and the corresponding mandate that Title VII protect them equally against discrimination. *Hively*, 2016 WL 4039703 at **12-13. The issuance of *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), a day after briefing closed in this appeal, provided the true apples-to-apples comparison to render this argument bulletproof and thus provide the panel with the "compelling reason to overturn circuit precedent" in the form of "a decision of the Supreme Court." *See Hively*, 2016 WL 4039703 *14 (citing *United States v. Lara–Unzueta*, 735 F.3d 954, 961 (7th Cir. 2013)). Moreover, *Hamner* and *Spearman* predate even *Lawrence v. Texas*, 539 U.S. 558 (2003), before which it was thought that intimate relations between same-sex couples could be criminalized. The law's prior unequal treatment of same-sex and different-sex couples undermined the ability to make Title VII comparator arguments in the past. *See*, *e.g.*, *Foray v. Bell Atlantic*, 56 F. Supp. 2d 327, 329-30 (S.D.N.Y. 1999). Given that Supreme Court decisions since 2000 have equalized the treatment of interracial couples and same-sex couples and ended doubt that Title VII must cover discrimination against an employee in a same-sex relationship just

as it protects an employee in an interracial relationship, the panel can and should overrule *Hamner* and *Spearman*.

At a minimum, however, the panel should amend its decision upon rehearing to correct one false and one misleading passage, each of which give an incorrect impression of the weight of authority supporting the result reached. First, it is simply incorrect that *Muhammad v. Caterpillar, Inc.*, 767 F.3d at 697, "cit[ed] the holding in *Spearman*, 231 F.3d at 1085" to "hold that the Title VII prohibition on discrimination based on 'sex' extends only to discrimination based on a person's gender, and not that aimed at a person's sexual orientation." *Hively*, 2016 WL 4039703 at *2. *Muhammad*'s only reference to *Spearman* is in the procedural history of the case, noting that when "[t]he district court granted summary judgment for Caterpillar . . . the court relied on our decision in *Spearman*." *Muhammad*, 767 F.3d at 697. Indeed, in response to briefing in support of a petition for rehearing in *Muhammad*, the court amended its opinion and clarified that it was *not* reaffirming its precedent regarding Title VII coverage by deleting unnecessary language suggesting such an endorsement. *See* Docket Entry No. 56, *Muhammad v. Caterpillar, Inc.*, No. 12-1723 (7th Cir. Oct. 16, 2014).

Finally, the panel should excise misleading and unnecessary language that may suggest a reaffirmance of *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1086 (7th Cir. 1984). The panel cited *Ulane*'s statement that "Congress had a narrow view of sex in mind when it passed the Civil Rights Act." *Hively*, 2016 WL 4039703 at *1 (quoting *Ulane*, 742 F.2d at 1086). The problem lies in the subsequent quote that "our understanding in *Ulane* that Congress intended a very narrow reading of the term 'sex' when it passed Title VII of the Civil Rights Act, so far, appears to be correct." *Hively*, 2016 WL 4039703 at *3. A later passage of the opinion reveals how unnecessary that quote is: "A court would not necessarily need to expand the definition of 'sex discrimination'

beyond the narrow understanding of 'sex' we adopted in *Ulane*, to conclude that lesbian, gay, and bisexual employees who are terminated for their sexual conduct or their perceived sexual conduct have been discriminated against on the basis of sex." *Id*. at *13; *see also id.* at *7. Any reference to the breadth or narrowness of *Ulane*'s interpretation of "sex" in Title VII is not germane to the panel's opinion, and should not be casually endorsed, because "federal courts have recognized with near-total uniformity that 'the approach in . . . *Ulane* . . . has been eviscerated' by *Price Waterhouse*." *Glenn*, 663 F.3d at 1318 n.5.

## CONCLUSION

Plaintiff-Appellant Hively respectfully requests that the full court rehear this case en banc, overrule prior precedents that the panel felt constrained it, and remand the case to the District Court so that Hively can prove that Defendant-Appellee took her gender into account in its adverse employment actions. Alternatively, Hively respectfully requests that the panel grant rehearing or, at a minimum, correct the inaccurate and misleading passages described above.

Dated this 25th day of August, 2016.

Respectfully submitted,

*/s/ Gregory R. Nevins*

Gregory R. Nevins (*Counsel of Record*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
730 Peach Street NE, Suite 640
Atlanta, Georgia 30308
gnevins@lambdalegal.org

*/s/ Omar Gonzalez-Pagan*

Omar Gonzalez-Pagan
Karen L. Loewy
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
ogonzalez-pagan@lambdalegal.org
kloewy@lambdalegal.org

*Counsel for Plaintiff-Appellant Kimberly Hively*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Petition for Rehearing and Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system on August 25, 2016. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated this 25th day of August, 2016.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
ogonzalez-pagan@lambdalegal.org